## Ezekiel Dougherty, Plff. in Err., *v.* Elias A. Mortland et al.

Although a trust deed of property may have been a fraud on the creditors of the grantor, and the grantee might have refused to execute the trust yet if the grantor's creditors do not complain and the grantee chooses to execute it, a sheriff's vendee of property of the grantee, including the estate so held in trust, cannot interfere and prevent him from doing so.

(Argued October 17, 1887. Decided October 31, 1887.)

October Term, 1887, No. 44, W. D., before GORDON, Ch. J., PAXSON, GREEN, and WILLIAMS, JJ. Error to the Common Pleas of Butler County to review a judgment in favor of defendants in an action of ejectment. Affirmed.

A judgment having been recovered against Elias A. Mortland, execution was issued and levied upon certain land the title of which was alleged to be in said Mortland. The land was sold at sheriff's sale and purchased by Ezekiel Dougherty, who brought this action against Mortland to recover possession of the property. Afterwards Stephen Mortland, who was in possession of the property, was, upon motion, added as a codefendant in the action. Judgment was entered in favor of defendants for one

NOTE.—A party not injured by a fraudulent conveyance has no standing to object thereto. Thus, if the creditor has a judgment which is a lien on the property conveyed (Kinnear v. Gealy, 1 Pennyp. 284) ; or if he has consented to the transfer (Zuver v. Clark, 104 Pa. 222). Nor can a judgment creditor of the grantee object. Eyrick v. Hetrick, 13 Pa. 488; Haymaker's Appeal, 53 Pa. 306.

fourth of the land upon confession, but defense was made as to the remaining three fourths. The title to the property was admitted to have been in James Mortland, and a deed dated December 28, 1859, was offered in evidence from James and Mary Mortland to Elias A. Mortland. Defendants gave notice that the validity of the deed would be attacked on grounds outside of the deed, and called one Joseph Kerr and offered to prove by him and other witnesses that James Mortland in his lifetime and up to within a few years before his death by reason of grossly intemperate habits was unfit to make a contract or execute a deed; that he was unfit to transact business by reason of unsoundness of mind. The court, against plaintiff's objection, sustained this offer. [1]

The court then, against plaintiff's objection, permitted the following question to be answered [2]: "From your knowledge of him, Mr. Kerr, and your observation of him, do you or do you not consider him competent to transact business, to make a deed, or to do other business in 1859?

On November 17, 1879, the land had been divided into four nearly equal shares, and the court admitted in evidence, against plaintiff's objection [3] the following offer: "Now we have the partition and a plat of it here. I may want to use it in this connection and as to further examination of Mr. Mortland, I offer this partition and if necessary I will prove its execution. Just at this point I offer the partition dated November 17, 1879, of this property, to and among E. A. Mortland, James Mortland, John Mortland's widow and heirs, and Stephen Mortland."

Stephen Mortland, one of the defendants, being on the stand, the court, against plaintiff's objection, allowed him to be asked [4] the following question: "I will change the question: Did your father at any time have any conversation with you after the date of the deed, in relation to this property."

The court admitted against plaintiff's objection [5] the offer in evidence of a judgment of William Murrin for use of John Murrin against James Mortland for $600 entered at March term, 1859, and one of John Murrin against James Mortland for $821 with interest entered at September term, 1859, filed September 28, 1859, for the purpose of showing that at the date of the deed these claims were judgments against the land.

The court admitted in evidence, against plaintiff's objection, [6] the power of attorney under which Stephen Mortland

acted; also, against plaintiff's objection, admitted Elias A. Mortland as a witness and permitted him to testify as to any claim or interest he had in the land at any time, and to prove a parol trust. [7]

The court, BREDIN, P. J., charged the jury, *inter alia*, as follows:

Now then, we start out with the fact that the plaintiff has a clear title to this land on the face of the papers, and if that title is to be overthrown it must be by clear, precise, and satisfactory evidence on the part of the defendants, because, as a rule, a paper title, that is, a written instrument—written evidence— ought not to be overthrown by parol or verbal evidence unless that parol evidence is very clear and convincing.

The defendant says that although this title was apparently in Elias A. Mortland, yet that in effect it was held by him in trust for his father and mother, and as a home for them during their lifetime, and after the death of his father would belong to the children of James Mortland and should be divided equally among them, Elias being entitled to one fourth, and not to the whole. The principal testimony as to that is by Elias A. Mortland himself. The plaintiff says to you that Elias A. Mortland, after the deed was delivered to him, went into possession of the land, used it and controlled it as his own for a period of some twenty years; that he leased the land to croppers; that he in every way, so far as we have any evidence, treated the land as though the deed conveyed to him absolute title. There is evidence here, the jury will recollect, that he sold certain parts of the land in lots and that Stephen Mortland cropped under him, and that has some bearing on the character of the deed that conveyed the land to Elias, and on his possession under it. Of course you will recollect that sometimes a man's acts speak much louder than his words.

We do not recollect that there is any evidence of any act of Elias A. Mortland's that is inconsistent with the fact that this deed conveyed absolute title, until about 1879, which was after the judgment upon which the land was sold had been entered up against him. Now, the plaintiff relies upon that testimony to show that this partition that is now set up by the defendants was a mere after-thought. The plaintiff says that this was never thought of in fact until after Elias found that this judgment

had been entered up against him and he was about to lose the land; that then this scheme was resorted to among the heirs to retain possession of the land against the creditors of Elias and defraud them by giving them one fourth of the land instead of the whole. All this testimony is for you and not for us. It is for you to give it such weight as you think it is entitled to. You start with the fact that the presumption is in favor of the conveyance. The presumption is that the deed conveyed absolute title; and it is the business of the defendants to satisfy you by clear, precise, and satisfactory evidence that the deed, although on its face absolute, in fact, did not convey absolute title to Elias A. Mortland.

Now we will just say to the jury that if they are satisfied, by clear, precise, and satisfactory evidence, that Elias A. Mortland, although the deed is absolute on its face and recites a consideration of $2,500, and although Elias A. Mortland went into possession and did act as though it was his own, yet if you are satisfied by clear, precise, and satisfactory evidence that Elias got it, not for his own benefit, but for the benefit of himself and his other brothers and to keep a home for his father and mother during their lifetime; that his father was a man of intemperate habits; that the conveyance was made under that arrangement and agreement, and that it was voluntary on his father's part; that no consideration was paid by Elias or received by his father, although the deed recites one—recites a consideration, then although Elias did, after the death of his father, continue to hold the land, and permitted it to be recovered against him, by not enforcing the rules of law as to limitations of actions in cases of trust, and as to parol proof affecting a written instrument, and as to the competency of witnesses, yet he was not bound to do so; and if before the plaintiff sold this land he had admitted and acknowledged the title of the other defendants to this land, in pursuance of the agreement made by him with his father at the time the deed was made, then the defendants can hold the land, even though the plaintiff's title may be correct on its face. The jury will understand that, even if now, when Mortland has gone on the stand and said that the deed was intended to pre-vent Speer and others from collecting their claims against his father—that the $2,500 was put in as consideration to give it the appearance of an absolute deed to keep off these creditors.

Now we say to the jury that a deed made in that way would

be void as against the creditors of James Mortland, and that Speer and others could have levied on the land as the property of James Mortland, sold it, and took good title to it; but it would be good as between James and Elias.

Elias could hold the land against his father; because his father, being a party to the fraud, could not set up that it was a fraud. He was as much bound by it at the same time he made it, as between himself and Elias, as though it was bona fide; and Elias was guilty of a fraud in taking this deed and could have been indicted and punished for the fraud upon his own evidence, as given in this case. Yet he is not bound to commit another fraud by refusing to let his brothers and sisters have their share in the land. There is no rule of law that requires a man to be dishonest, and no rule requiring him to follow one fraud with another fraud. If this deed was made by James Mortland, although made to defraud his creditors, to secure a home for himself and wife, and to keep the farm there for the benefit of his children, and Elias took the deed under that arrangement, then, although the deed was a fraud on James Mortland's creditors, and although when Elias took this deed absolute on its face, he might have held the land against even his brothers, yet we know of no rule of law that would compel Elias to set up such a defense against the other heirs. If he took the deed under that arrangement, although a fraud as to the creditors of James Mortland, and for which James and Elias could have been indicted and punished and the deed set aside as to James Mortland's creditors, yet we know of no rule of law that compels Elias to set that up as a defense against his brothers and refuse to carry out the arrangement made with his father.

We say that if the jury find the evidence to be clear, precise, and satisfactory, and it is for you to be satisfied from clear, precise, and satisfactory evidence that such is the fact; and if you so find,—then they would be entitled to hold the land even against the title on part of the plaintiff which is clear and correct on its face.

There has been a great deal of other evidence in this case— evidence as to the ejectment and partition. The plaintiff says that was all part of the scheme—an attempted fraud on part of Elias; that it goes to show that it was all an after-thought; that he was merely scheming and trying to get rid of the position in which he stood, and save a home for himself by means of his

brothers and their children. All this testimony is to be considered by the jury; and unless, after having heard the whole testimony, they are satisfied that it is clear, precise, and satisfactory, and clearly establishes title in the defendants, your verdict should be for the plaintiff; whereas, if the defendants have satisfied you by clear, precise, and satisfactory evidence, as we have just now said, then your verdict should be for the defendants.

Plaintiff requested the court to charge:

"1. That the fact of the alleged trust, in this case, rests solely on the evidence of Elias A. Mortland, the debtor in the execution upon which this land was sold, and his avowal of the acquisition of the land for the use of his brothers, John, James, and Stephen, whether made contemporaneously with or subsequent to the conveyance to him by his father, is not sufficient of itself to support an allegation of trust as against the sheriff's vendee in this case."

The court refused to do so, and answered:

"The evidence is submitted to the jury and its sufficiency is for them and not for the court." [8]

"2. That the evidence of Elias A. Mortland, that at or about the time of the execution of the deed by James Mortland to Elias A. Mortland, he, Elias, agreed with his father to hold the title in trust for the said James Mortland and wife during their lives, being in flat contradiction of the written instrument and introducing an inconsistent relation, is incompetent and insufficient to establish a trust in Elias A. Mortland."

The court refused, and answered:

"Such evidence is not in flat contradiction of the written instrument and under the circumstances alleged by defendant is receivable to show that though the deed on its face conveyed an absolute title, such was not the agreement of the parties. If the jury are satisfied, as we have said, by clear, precise, and satisfactory evidence of that fact, it is sufficient to protect the defendants in their possession of the land." [9]

"3. That to establish a trust against a purchaser at sheriff's sale, under an execution against the alleged trustee, it is necessary not only to establish clearly the existence of the trust, but also that the sheriff's vendee of title had knowledge of the trust at the time of the purchase; and that there is not sufficient proof

in this case that the plaintiff had such knowledge; and therefore the verdict of this jury must be for the plaintiff, for the land described in the writ."

The court refused, and answered.

"This point is refused. We understand that prior to the sale an ejectment had been brought by Stephen Mortland and the other heirs of James Mortland, against Elias Mortland and a recovery of three fourths of the land. This ejectment the law required to be indexed in what is called the 'ejectment index.' This, with the notice proven to have been given at the sheriff's sale would be, we think, sufficient to put the plaintiff on inquiry; therefore the point is refused." [10]

"4. That a trust, if created at all in this case, arose at the time of the execution of the deed to Elias Mortland in 1859, and that Stephen Mortland and James Mortland, under the evidence in this case, will be debarred from enforcing all alleged trusts by delay for nearly twenty years or more, against the sheriff's vendee of title of the alleged trustee, Elias A. Mortland, no notice of said trust having been given or brought home to the purchaser, the plaintiff in this case, at the sale, and the verdict must be for the plaintiff."

The court refused, and answered:

"We refuse this point. In regard to the notice given, the answer is as in answer to the third point just read, and as we stated in our general charge. Elias A. Mortland might have set up the rules of law as to limitations of actions in case of trusts, but he was not bound to do so. If, before the sale was made, he acknowledged or admitted the trust, and permitted the other defendants to recover in ejectment, that would not debar them from setting it up." [11]

"6. That the issue in this case is alone between Ezekiel Dougherty, the purchaser at sheriff's sale of the title of Elias A. Mortland—which is absolute on its face, and which has remained on record for more than twenty years without any attempt on part of Stephen to impeach its validity, by any legal investigation, until now, so far as appears by evidence in the case—and Elias and Stephen Mortland; and if the jury believe, from the evidence, that Stephen went on and cropped the farm in controversy, under Elias, and continued cropping it, and for his compensation received the one third of the crop, until and after the land was levied and sold for the debt of Elias and so continues,

then he cannot avail himself of the alleged parol trust in this action; and the verdict must be for the plaintiff."

The court refused, and answered:

"We refuse that. How Stephen got there is, of course, for the jury to decide, along with the other evidence in the case. It did not absolutely debar him." [12]

"8. That under all the evidence in this case, the plaintiff is entitled to recover possession of the land described in the writ."

The court refused, and answered:

"We refuse that." [13]

*L. Z. Mitchell* and *David Barclay,* for plaintiff in error.— The receipt in the deed of James Mortland, acknowledging the payment of the consideration, is prima facie evidence of payment. Britton v. Stanley, 4 Whart. 114.

The acquiescence of James Mortland from December 28, 1859, up to the time of his death, June 10, 1871, a period of about twelve years, would not be shaken by the evidence of Elias, unsupported as it is. The alleged nonpayment of money is the only thing in evidence that can point to a trust and that is insufficient to affect the prima facies of payment.

If a trust does not arise at the time of the conveyance of the estate, it can never arise; for no matter *ex post facto* can have any effect. Shep. Touch. 67; Beck v. Parker, 65 Pa. 262, 3 Am. Rep. 625; Druckenmiller v. Young, 27 Pa. 97.

The trust claimed in this case is one created by act of the parties or an express trust. Such a trust cannot be proved by parol evidence, since the passage of the act of 1856. Braden v. Workman, 1 Sad. Rep. 104.

The evidence of Elias A. Mortland was improperly admitted.

*J. C. Vanderlin, Lev. McQuistion,* and *John M. Thompson,* for defendant in error.—Whatever the favor with which a deed from a father to his son is viewed as a family arrangement, where no consideration was paid, it surely ought to have only the operation intended by the parties. Price's Appeal, 54 Pa. 472; Hill, Trustees, p. 168.

Chesterfield v. Janssen, 2 Ves. Sr. 155, distinguishes the cases of fraud against which the court will relieve into four cases: (1) Fraud arising from facts and circumstances of imposition, which is the plainest case; (2) fraud apparent from the intrinsic

value and subject of the bargain itself, such as no man in his senses and not under delusion would make on the one hand and as no honest or fair man would accept on the other; (3) fraud which may be presumed from the circumstances and condition of the parties contracting; a rule which is wisely established by the court to prevent taking surreptitious advantage of the weakness or necessity of another; and (4) fraud collected from the circumstances of the transaction as being an imposition or deceit upon other persons not parties to the fraudulent agreement.

Where a person procures a devise to be made in his favor on the distinct declaration or promise that he will hold the land in trust either in whole or in part for another, and then fraudulently refuses or neglects to fulfil the promise on the faith of which it was executed, a trust is presented which a court of equity will enforce by compelling a conveyance when the proper time for it has arrived.   Church v. Ruland, 64 Pa. 432.

The act of 1856 does not apply when the *cestui que trust* is in possession of the land, and when the holder of the legal title permits the *cestui que trust* to occupy the land he shall derive no benefit from the lapse of time.   Smith v. Tome, 68 Pa. 158; Douglass v. Lucas, 63 Pa. 9.

If possession precedes the trust relation, the statute would not begin to run, it would be entry.   Clark v. Trindle, 52 Pa. 492.

But where the grantee is a trustee upon a valid trust, no matter for whom, he has no title which can pass as against the *cestui que trust* if the purchaser have either actual or constructive notice of the trust.   Where property is conveyed by A to B by deed absolute on its face, but a trust is reserved by parol in favor of C, a judgment creditor of B who afterwards buys the property at sheriff's sale under his judgment will be bound by express notice of C's equitable title given at any time before the sheriff's sale.   Sill v. Swackhammer, 103 Pa. 7.

PER CURIAM:

The charge of the learned judge below was an accurate and clear statement of the law of this case.   Nor do we see any error in his rulings upon the offers of evidence.

It may be that the deed from James Mortland to his son Elias was a fraud upon the creditors of the former, and that Elias might have refused to execute the trust in favor of his brothers and sisters, yet the creditors of James are not here to complain;

and as to the trust, it is sufficient to say that the sheriff's vendee of Elias' real estate, who is a mere volunteer, has no standing to compel him to be a rogue, and cheat his brothers and sisters out of their share of the farm. If Elias chooses to be honest and execute the trust, we know of no law to prevent him.

Judgment affirmed.